IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| MARCIA PEARL, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-18-777 |
| PRINCE GEORGE'S COMMUNITY COLLEGE, *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION AND ORDER

Marcia Pearl, who is proceeding without counsel, has filed suit against Defendants Prince George's Community College (the "College"); the College's Board of Trustees (the "Board"); Howard Stone, Chair of the Board; and Dr. Charlene Dukes, President of the College. Compl., ECF No. 1; *see* Pl.'s Opp'n 17, ECF No. 21 (clarifying Defendants). She claims two forms of discrimination: harassment based on race (she is Black), and discrimination based on Defendants' failure to promote her, as well as retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Md. Code Ann., Educ. § 11-406. Compl. Defendants have moved to dismiss most, but not all, of Pearl's claims. ECF No. 14.[1] I will dismiss the Educ. § 11-406 claim because no private cause of action exists under the state statute. Because Stone and Dukes are not proper defendants, I will dismiss the claims against them in their individual capacities. And, given that Pearl failed to exhaust her discriminatory failure to promote

---

[1] The parties fully briefed the motion. ECF Nos. 14-1, 21, 22. A hearing is not necessary. *See* Loc. R. 105.6.

claim, I will dismiss it. The motion is denied with regard to Abel's discriminatory harassment claim. Finally, I will limit her retaliation claim to two of the actions Pearl identifies as adverse employment actions—failure to promote and the change in her schedule—, dismissing her claim to the extent it is based on Defendants' poor evaluation of her.

## **Background**[2]

Marcia Pearl began working for the College in the Art, Music & Philosophy Department in August 2004. Compl. 8. She claims that Art Department Administrator Carol Abel harassed and discriminated against her throughout her time at the College, and Professor Thomas Berault also harassed her between 2012 and 2013. *Id.* at 8–10. Specifically, she claims that Abel interfered with her ability to obtain an office nameplate from 2004 through 2008, called her "Buckwheat" and "Alfalfa" after she started "wearing a natural hairstyle" in 2008, and referred to students using "the N word," while Berault also called her "Buckwheat" and emailed her a picture of Buckwheat. *Id.* at 8–10.[3] According to Pearl, Art Department Chair Barbara Johnson was present once when Abel called her "Alfalfa," but Johnson did nothing. *Id.*

Pearl complained to the College's Human Resources Department and Chief of Staff Alonia Sharps on January 23, 2013. Compl. 10. Pearl asserts that her internal complaint was investigated,

---

[2] For purposes of Defendants' Motion to Dismiss, I accept Pearl's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 391 (4th Cir. 2011). Both parties have attached exhibits, and therefore I have the discretion to consider the exhibits and construe Defendants' motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Given that Pearl states that she "requested complete record of EEOC Case Files – July 29, 2018," Pl.'s Opp'n 3 n.1, only days before she filed her Opposition on August 2, 2018, it would be premature to construe Defendants' motion as one for summary judgment. Accordingly, I will exclude the exhibits and treat the motion as a motion to dismiss.

[3] Pages 8–13 of the Complaint are verified. *See* Compl. 8, 13. Buckwheat and Alfalfa were characters on the 1950's television show *The Little Rascals*; Buckwheat was Black and Alfalfa was white. Alfalfa is well-known for his hairstyle, which included a pronounced cowlick.

but her own witnesses were intimidated to prevent them from testifying and, even though Abel and Berault admitted that they used racial epithets, Pearl's informal complaint was dismissed. *Id.* at 11. Additionally, Johnson "implemented no corrective measures against Abel and Berault." *Id.* On February 28, 2013, Pearl filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC Charge"), alleging that she was discriminated against when Abel and Berault used racial epithets in speaking with her and to describe her. EEOC Charge, ECF No. 14-4.

According to Pearl, things got worse after she complained: She felt that she was "attacked" on February 8, 2013 by Art Department Chair Barbara Johnson for filing the EEOC Charge; she received an "unsatisfactory 2013 Multifunctional Review (MFR) Evaluation" on March 5, 2013; and she was "assigned an undesirable schedule, consisting of weekend and evening classes," which she views as "an attempt to isolate [her] from Department members." Compl. 11–12. She claims that she became depressed because her colleagues stopped speaking to her during the 2013–2015 period. *Id.* at 12.

On March 5, 2013 a white man named John Anderson was selected for a position as "VisComm Coordinator," a position that Defendants had not posted, which prevented Pearl from applying for it. *Id.* at 12. She claims that she was "precluded from applying to the VCC position despite [her] superior qualifications, experience and job knowledge in comparison to a white male that Johnson hand-selected without[] advertising the position through the proper channels." *Id.* at 13.

## **Standard of Review**

Defendants move to dismiss based on Pearl's alleged failure to state a claim and exhaust administrative remedies. A motion to dismiss based on a plaintiff's alleged failed to exhaust administrative remedies is a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject

3

matter jurisdiction. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). When, as here, the defendant contends that the complaint simply does not allege that the plaintiff exhausted administrative remedies, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 Fed. App'x 236, 241 (4th Cir. 2013).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a prima facie case of discrimination under the framework set forth' in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cty.* ("*Westmoreland I*"), No. AW–09–2453, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 511–12). If this were the case, a plaintiff claiming employment discrimination would have "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512). Nonetheless, a plaintiff "must plead facts sufficient to state each element of the asserted claim." *Lopez v. BMA Corp.*, No. DKC–13–2406, 2013 WL 6844361, at *9 (D. Md. Dec. 24, 2013) (discussing *Swierkiewicz* holding and citing *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765–65 (4th Cir. 2003)).

Because pro se lawsuits, such as Pearl's, "represent the work of an untutored hand requiring special judicial solicitude," the Court must "construe pro se complaints liberally," such that "litigants with meritorious claims [are] not . . . tripped up in court on technical niceties." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)). Even so, "[d]istrict judges are not mind readers," and "[e]ven in the case of pro se litigants, they cannot be expected to construct full blown claims from sentence fragments . . . ." *Id.* at 1278. Therefore, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits," and this Court need not "conjure up questions never squarely presented to [it]." *Id.*

**Education § 11-406 Claim**

Pearl alleges that Defendants violated Md. Code Ann., Educ. § 11-406, a state statute requiring colleges and universities in Maryland to "develop and implement a plan for a program of cultural diversity." Md. Code Ann., Educ. § 11-406(b)(1)(i). She insists that "[t]here is a legal cause of action under Education Article, Annotated Code of Maryland, § 11-406 in this action, simply because the mandated provision applies equally and without exception to all public colleges and institutions that receive state funding." Pl.'s Opp'n 4. But, even if their actions violated the statute, there simply is no cause of action for an individual litigant to bring under Educ. § 11-406. As Defendants explain:

> The statute prescribes what a plan must include, how the plan is submitted to the Maryland Higher Education Commission (MHEC), and what MHEC must do to review the plan. *Id.* The statute does not, however, create a private cause of action. *See id.*; *see also Fangman v. Genuine Title, LLC*, 136 A.3d 772, 779-780 (Md. 2015) (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)) (discussing whether a private remedy is implicit in a statute); *Baker v. Montgomery Cnty.*, 50 A.3d 1112, 1122-24 (Md. 2012) (citations omitted) (there is no cause of action "simply because a claim is framed that a statute was violated and a plaintiff . . . was harmed by it"). The statutory text and legislative history of Senate Bill 438 -- the legislation that resulted in Section 11-406 -- show that the Maryland General Assembly did not intend to create a private cause of action.

Defs.' Mem. 7–8; *see also* EDUCATION—INSTITUTIONS OF HIGHER EDUCATION—CULTURAL DIVERSITY PROGRAMS, 2008 Maryland Laws Ch. 579 (S.B. 438) ("FOR the purpose of requiring certain nonpublic institutions of higher education to submit a certain report regarding cultural diversity programs to the Maryland Independent College and University Association on or before a certain date each year; requiring the Association to submit a certain report on the status of certain cultural diversity programs to the Maryland Higher Education Commission on or before a certain date each year; requiring the report to include a certain analysis; requiring certain public institutions of higher education to develop and implement certain plans for a program of cultural diversity; requiring certain plans to include certain improvements to

certain programs under certain circumstances; requiring certain plans to include certain implementation strategies and timelines for meeting certain goals; providing for the contents of a certain plan; requiring certain plans to enhance certain programming and certain sensitivity through certain instruction and training; requiring certain public institutions of higher education to submit certain plans to the governing body of the institution for review on or before a certain date each year; requiring the governing body of certain institutions to submit a certain progress report to the Commission on or before a certain date each year; requiring the Commission to review the progress report to monitor compliance with the diversity goals of the State Plan for Higher Education; requiring the Commission to submit a certain report to certain committees of the General Assembly on or before a certain date each year; defining a certain term; and generally relating to plans for programs of cultural diversity."). Accordingly, Pearl's claims for violations of Educ. § 11-406 are dismissed with prejudice.

## **Defendants Dukes and Stone**

Defendants assert that Dukes and Stone are not proper defendants. Defs.' Mem. 8. Pearl argues that "Dukes and Stone are liable pursuant to the 'Cat's paw theory of liability' wherein an employee or supervisor, motivated by discriminatory intent, influences a decision-maker to take an adverse employment action against another employee . . . ." Pl.'s Opp'n 2; *see also id.* at 16. Yet the Fourth Circuit has stated with regard to Title VII that "individuals are not liable under that Act." *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Thus, while the "cat's paw" theory may suffice to allow the conduct of a non-supervisor to be imputed to a supervisor for purposes of establishing the liability of the plaintiff's *employer*, it is not a basis for establishing the liability of either the individual alleged to be the cat's paw or the individual alleged to be controlling the cat's paw. Therefore, the Title VII claims against Dukes and Stone in their

7

individual capacities are dismissed with prejudice. *See id.*; *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (dismissal with prejudice is appropriate when amendment would be futile); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

**<u>Discriminatory Failure to Promote Claim</u>**

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas*, 711 F.3d at 406. Therefore, to bring a Title VII employment discrimination claim in federal court, a plaintiff must first "exhaust his [or her] administrative remedies . . . ." *Van Durr v. Geithner*, No. 12-2137-AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2004)); *see Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009). To do so, a plaintiff must file a timely administrative complaint pursuant to 42 U.S.C. § 2000e-5(e)(1). *Balas*, 711 F.3d at 406; *Jones*, 551 F.3d at 300; *Krpan v. Bd. of Educ. of Howard Cty.*, No. ELH-12-2789, 2013 WL 4400475, at *5 (D. Md. Aug. 15, 2013).

A plaintiff only exhausts her administrative remedies as to "'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, [ ] those developed by reasonable investigation of the original complaint,' and those contained in official amendments to the EEO complaint." *Vann Durr v. Lew*, No. DKC-12-2137, 2014 WL 4187821, at *1 (D. Md. Aug. 22, 2014) (quoting *Jones*, 551 F.3d at 300); *see Addison v. Dep't of the Navy*, No. DKC-13-846, 2015 WL 1292745, at *4 (D. Md. Mar. 20, 2015) (same); *Krpan*, 2013 WL 4400475, at *5–6 (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim in his complaint to the EEOC"); *Bryant*, 288 F.3d at 132–33 (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination). This means that "so long as 'a plaintiff's claims in her judicial

8

complaint are reasonably related to her [administrative] charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012) (quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000)). In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Id.*

Pearl filed an EEOC Charge on February 28, 2013, ECF No. 14-4, and Defendants do not challenge its timeliness. Rather, they argue that the charge focused only on the racial epithets directed at Pearl and used to describe her. Defs.' Mem. 9. This is true. A plaintiff cannot bring a discrimination claim in this Court that is unrelated to the discrimination claim or claims she alleged in her EEOC charge. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 161 (4th Cir. 2018). In *Nnadozie*, one of the employee plaintiffs, Sunday Aina, had filed an EEOC "Charge of Discrimination [that] lack[ed] any reference to his alleged discriminatory termination." *Id.* On that basis, the Fourth Circuit concluded that the employee failed to exhaust his administrative remedies and it affirmed summary judgment in the employer's favor. *Id.* It reasoned:

> As the district court correctly found, Aina cannot maintain this cause of action under Title VII because he failed to mention any facts related to his termination in his EEOC Charge of Discrimination. [An EEOC] charge must "describe generally the action or practices complained of," [*Chako*, 429 F.3d] at 509 (quoting 29 C.F.R. § 1601.12(b) (2004) ), so as to provide adequate notice to the charged party, *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). Although this Court construes EEOC charges liberally, our liberal construction only stretches so far. For instance, "[a] claim will ... typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Chacko*, 429 F.3d at 509. Accordingly, "[t]he filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Id.* at 510.

*Nnadozie*, 730 F. App'x at 161. Similarly, in *Briscoe v. W.A. Chester, L.L.C.*, this Court concluded that "because Plaintiff's Charge only reference[d] his demotion, he ha[d] not exhausted his

9

administrative remedies with respect to his failure to promote claim and, as such, the Court d[id] not have jurisdiction to hear it . . . ." No. GJH-17-1675, 2018 WL 2225091, at *2 (D. Md. May 15, 2018) (citing *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 668 (D. Md. 2013)); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (holding that "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit,' there is no subject matter jurisdiction.").

Here, Pearl's EEOC Charge presented allegations of racial discrimination and harassment based on Abel's and Berault's use of racial epithets; it does not allege that Defendants discriminated by failing to promote her. Nor does it in any way put Defendants on notice of that claim. Consequently, Defendants did not have the opportunity to resolve that claim prior to formal litigation. Therefore, Pearl has not exhausted her discriminatory failure to promote claim, and this Court lacks subject matter jurisdiction over it. See *Nnadozie*, 730 F. App'x at 161; *Sydnor*, 681 F.3d at 594; *Briscoe*, 2018 WL 2225091, at *2. Accordingly, I will dismiss it.

### **Discriminatory Harassment Claim**

Defendants argue that Pearl's "race-based hostile work environment claim should be dismissed because there is no basis to impute liability to PGCC." Defs.' Mem. 10. In their view, "the Complaint contains insufficient factual allegations to plausibly support a reasonable inference that racial harassment continued after she complained and the College investigated." *Id.* at 11.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton,* 524 U.S. 775, 809 (1998). In *Vance v. Ball State University,* the Supreme Court clarified that a harasser may be considered a supervisor "only when

the employer has empowered that employee to take tangible employment actions against the victim, *i.e.,* to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" 570 U.S. 421, 431 (2013) (quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998)).

Pearl alleges that Art Department Administrator Carol Abel and Professor Thomas Berault harassed her. Compl. 8–10. Abel is Art Department Chair Barbara Johnson's executive assistant. Pl.'s Opp'n 12. Pearl claims, in part, that "Abel interfered with [her] ability to perform [her] job by denying [her] access to supplies and office equipment." Compl. 10. This is not "tangible employment action[]." *See Vance*, 570 U.S. at 431. Pearl does not otherwise claim that either Abel or Berault had the authority to take any employment actions against her. Thus, neither was her supervisor. *See id.*

When, as here, "the harassing employee is the victim's co-worker," rather than a supervisor, "the employer is liable only if it was negligent in controlling working conditions." *Vance,* 570 U.S. at 424. Thus, the question is whether the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003) (discussing elements of sexual harassment claim under Title VII; noting that, in *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 759, (1998), the Supreme Court observed that "[n]egligence sets a minimum standard for employer liability under Title VII").

Pearl claims that Department Chair Johnson was present once when "Abel referred to [her] as 'Alfalfa.'" Compl. 9. She alleges:

> Johnson seemed confused and asked Abel to repeat the comment. "What did you say?" Abel answered, "I call her Alfalfa". To which I interjected "I've asker her many times not to call me that", adding "she seems to think it's amusing". Johnson retreated to her office and closed the door. She knew I was being harassed, but declined to intervene.

*Id.* Pearl claims that she complained to the College's Human Resources Department and Chief of Staff Alonia Sharps on January 23, 2013 and filed an EEOC Charge on February 28, 2013, Compl. 10, EEOC Charge, ECF No. 14-4, but the hostility of her workplace increased instead of decreasing, Compl. 11. According to Peal, Johnson "reproached [her] for reporting the discrimination" and "denied hearing Abel call [her] 'Alfalfa.'" *Id.* Pearl also alleges that Johnson retaliated against her, such as by giving her an unsatisfactory evaluation, giving her "an undesirable schedule," and preventing her from applying for (and obtaining) a promotion. Compl. 11–12. Additionally, she alleges

> B.J. Brooks, [the College's] Employee Labor Relations Manager, was assigned to investigate [Pearl's] internal complaint of racial harassment and discrimination. Brooks forbade [Pearl] from speaking to any of the individuals [she] identified as witnesses in [her] claim. She threatened said witnesses, and [Pearl] with termination if [they] defied this order. Meanwhile, Department staff was told of [her] complaint and the corresponding investigation.

Compl. 11. Pearl asserts that, in the investigation, "Ms. Abel had admitted to calling [Pearl] 'Buckwheat' and 'Alfalfa,' and Mr. Berault had admitted to addressing [Pearl] as 'Buckwheat' and sending [her a] disparaging photograph [of Buckwheat]," yet "Ms. Brooks dismissed all of [her] allegations on the sole basis of my former friendship with Berault and threatened to terminate [her]." *Id.* at 12. She claims that "[a]fter [she] filed the formal charges of discrimination, [she] experienced increased harassment," and Johnson "implemented no corrective measures against Abel and Berault." Compl. 11.

According to Pearl, after she complained, the work environment became more hostile and she "was treated like a pariah in the Art Department and Liberal Arts Division." *Id.* at 12. Thus,

12

Pearl has alleged sufficiently that the College acted negligently in managing the situation, which it was aware of but failed to remedy. *See Vance,* 570 U.S. at 424; *Ocheltree*, 335 F.3d at 333–34. It is true that Pearl does not allege any specific hostility after the investigation, suggesting that the investigation may have been effective after all. Nonetheless, she has alleged that, prior to the investigation, Johnson knew of at least one instance of name-calling, and Brooks mishandled the investigation. This is enough to warrant further development of her allegations. Her racial harassment claim will not be dismissed.

Additionally, Pearl's racial harassment claim will encompass her allegations that Abel would not place her order for an office nameplate between 2004 and 2008. *See* Compl. 8. Defendants assert that, in *Breck v. Maryland State Police*, 2017 WL 2438767 (D. Md. June 5, 2017), Judge Chuang stated that "continuing violation doctrine does not apply to discrete acts that are dissimilar from allegations supporting harassment claim." Defs.' Mem. 13. More accurately, Judge Chuang observed that, "for a hostile work environment claim, the factual basis for the claim may stretch back farther than 300 days 'so long as an act contributing to that hostile work environment takes place' within the 300 day period." *Breck*, 2017 WL 2438767, at *4 (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 105 (2002)). He concluded that the exception did not apply in the case before him because the plaintiff had not "plead[ed] a hostile work environment claim in her Complaint" and, "even if the Court were to construe the Complaint as asserting a hostile work environment claim, the allegations supporting such a claim ended more than 300 days before her EEOC Charge." *Id.*

The facts of the case before me are inapposite, as Pearl has pleaded a claim for harassment/hostile work environment and it is undisputed that some of the alleged hostility occurred within the statute of limitations period. Moreover, Abel's earlier actions, albeit distinct

13

from the racial epithets, were "part of a single, ongoing pattern of discrimination." *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007); *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011). Abel allegedly discriminated against Pearl, beginning in 2004 and extending at least into 2013, initially between 2004 and 2008 by not providing the office nameplate Pearl requested and then, beginning in 2008, calling Peal "Buckwheat" and "Alfalfa." Thus, Pearl has alleged that Abel engaged in a pattern of discrimination against her that began in 2004 and continued until at least 2013. Therefore, the earlier alleged hostility can be considered in support of the harassment claim under the continuing violation theory. *See Holland*, 487 F.3d at 219; *Smith*, 832 F. Supp. 2d at 581.

### **Retaliation Claim**

The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To survive the College's Motion to Dismiss, Pearl's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

Defendants concede that Pearl has stated a claim for retaliation based on Defendants' failure to promote her. Defs.' Mem. 10. But, in their view, that is the extent of Pearl's retaliation claim. *See id.* They argue that her claims that "the March 2013 evaluation and undated references to an 'undesirable schedule' are retaliatory . . . fail because the alleged retaliatory conduct does not amount to materially adverse employment actions." *Id.*

"Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)). Thus, actions qualify as adverse employment actions

14

only if "a reasonable employee would have found the challenged action[s] materially adverse, which in this context means [they] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Stennis v. Bowie State Univ.*, 716 Fed. App'x 164, 168 (4th Cir. 2017) (quoting *Burlington N.*, 548 U.S. at 68 (internal quotation marks omitted)). To be adverse, the action "need not affect the terms and conditions of employment," but "there must be 'some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'" *Id.* (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

Notably, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Williams v. Baltimore Cty., Md.*, No. ELH-13-03445, 2016 WL 3745980, at *26 (D. Md. Mar. 11, 2016) (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009)). Issuing a personal improvement plan, 'a verbal reprimand,' 'a formal letter of reprimand,' or 'a proposed termination' does not constitute an adverse employment action in a retaliation claim. *Wonasue v. Univ. of Md. Alumni Ass'n,* 984 F. Supp. 2d 480, 492 (D. Md. 2013) (quoting *Rock v. McHugh,* 819 F. Supp. 2d 456, 470–71 (D. Md. 2011)). Therefore, the issuance of an "unsatisfactory 2013 Multifunctional Review (MFR) Evaluation" on March 5, 2013, following Pearl's January 23, 2018 complaint to the College's Human Resources Department, Compl. 10, 11, and her February 28, 2013 EEOC charge, was not an adverse employment action. *See Wonasue,* 984 F. Supp. 2d at 492; *Rock,* 819 F. Supp. 2d at 470–71.

A change in work schedule to less favorable hours also is not typically an adverse employment action. *See Parsons v. Wynne*, 221 Fed. App'x 197, 198 (4th Cir. 2007). But, a scheduling change may be materially adverse when accompanied by additional allegations as to

the impact of the schedule change. *See Burlington N.*, 548 U.S. at 69 (noting that a schedule change could "matter enormously" under certain circumstances, such as "to a young mother with school-age children"). Pearl claims that she was "assigned an undesirable schedule, consisting of weekend and evening classes," which she views as "an attempt to isolate [her] from Department members." Compl. 12. She also alleges that, over the course of 2013, 2014, and 2015 her colleagues stopped speaking to her, which caused her to feel depressed. *Id.* When someone spends a significant amount of time at work and looks to her colleagues for conversation, separation from those colleagues could dissuade the employee from complaining about discrimination.[4] Thus, under the circumstances Pearl has alleged, the change in her schedule could amount to an adverse employment action. *See Burlington N.*, 548 U.S. at 69; *Stennis*, 716 Fed. App'x at 168. Therefore, Pearl's retaliation claim will proceed based on both Defendants' failure to promote her and their change to her work schedule.

---

[4] Defendants contend that this Court held in *Jones-Davidson v. Prince George's County Community College*, No. AW-13-2284, 2013 WL 5964463 (D. Md. Nov. 7, 2013), that "plaintiff did not allege materially adverse employment action when she began receiving less challenging assignments, *was avoided by colleagues*, and was criticized by a supervisor." Defs.' Mem. 10 (emphasis added). Such a holding could counsel against my conclusion in this case. But, in *Jones-Davidson*, the plaintiff was not "avoided by colleagues." *See id.* Rather, the plaintiff alleged that "management stopped acknowledging [her] daily accomplishments" and "stopped responding to her daily e-mails," facts that are distinct from the facts in this case. *Jones-Davidson*, 2013 WL 5964463, at *4. And in *Jones-Davidson*, the Court noted that in *Adams v. Upper Chesapeake Med. Ctr., Inc.,* No. AMD 08–346, 2009 WL 997103, at *4–5 (D. Md. Apr. 14, 2009), it had held that a "plaintiff did not suffer materially adverse employment action where she alleged, *inter alia,* that her *supervisor avoided her* and refused to talk to her and she suffered a minor delay in receiving documents from the human resources department"—again discussing a case where the avoidance was by a supervisor, not colleagues. *Id.* (emphasis added).

# **ORDER**

Accordingly, for the reasons stated in this Memorandum Opinion, it is, this 14th day of January, 2019, hereby ORDERED that Defendants' Motion to Dismiss, ECF No. 14, IS GRANTED IN PART and DENIED IN PART, as follows:

   a. The claim pursuant to Md. Code Ann., Educ. § 11-406 is dismissed with prejudice;
   b. The claims against Defendants Stone and Dukes in their individual capacities are dismissed with prejudice;
   c. Pearl's discrimination claim based on failure to promote is dismissed;
   d. Pearl's discrimination claim based on racial harassment shall go forward;
   e. Pearl's retaliation claim shall go forward based on failure to promote and the change in her schedule, and otherwise is dismissed.

Thus, the claims that remain are for racial harassment and retaliation; the retaliation claim is limited to two alleged adverse employment actions: failure to promote and the change in Pearl's schedule.

/S/
Paul W. Grimm
United States District Judge

lyb